35743. WHITE, by Guardian, *v.* ST. PAUL-MERCURY INDEMNITY COMPANY *et al.*

DECIDED OCTOBER 17, 1955—REHEARING DENIED NOVEMBER 29, 1955.

*McCord & Cooper,* for plaintiff in error.

*Currie & McGhee,* contra.

FELTON, C. J. Mr. Robert Menand testified that he was chef at the club at the time Mr. White was stricken; that Mr. White was his assistant chef; that Mr. White's duties required him to lift trays of dishes, supervise the cooks and to generally keep the kitchen operating; that the rush period at the club was between

the hours of 12 or 12:30 p. m. and 2 p. m.; that during such rush hours everyone connected with the kitchen and the serving of food was "nuts"; that during such hours Mr. White, as assistant chef, was put under physical and mental strain; that on the day Mr. White was stricken he saw Mr. White after he was stricken and that was around 1 or 1:30 p. m.; that on that day Mr. White was performing his normal duties as assistant chef. "Q. Was that a normal day? A. I don't think so. It was a little bit more than normal. I was downstairs and anytime I am downstairs—something is not right. When I came up, that is when they told me he was sick. Q. Actually, he had it all that day, is that correct? A. Yes, he was by himself that day. Q. When was the last time you saw Mr. Pelzer White on the day he became ill? A. Downstairs. They were carrying him out. They had him outside. It was kind of cold that day. I saw them when he came downstairs. I was going to look for Mr. White; the dishes didn't come out fast enough, you know. I looked for him, and somebody said he fell down in the bathroom." Mr. Menand further testified that Mr. White's workday usually was from 12 noon until 9 or 9:30 p. m.

Mr. Willard E. Harrison testified that he was assistant manager of the Atlanta Athletic Club; that while his duties were not to supervise the personnel of the kitchen, during the rush hours even he helped in the serving of food; that during such hours everyone is under "tension to quite an extent"; that a tray of dishes usually weighed between 40 and 50 pounds; that on the day of the accident Mr. White was on duty as assistant chef; that he saw Mr. White on the job; that Mr. White was doing the job he was hired to do.

Dr. George W. Fuller testified that he treated Mr. White immediately after the attack and that Mr. White had been under his care since; that excitement, worry, anxiety and exertion, such as described, could precipitate a cerebral hemorrhage; that anything which would increase the blood pressure might break a weak vessel in the brain.

There was evidence that Mr. White's employment duties put him under mental and physical strain, and there was medical evidence that such mental and physical strain could have precipitated the hemorrhage. The only reasonable conclusions that can be reached from the direct and circumstantial evidence are that

Mr. White was performing his employment duties at the time he suffered the cerebral hemorrhage, and in the absence of evidence that the hemorrhage was due to another cause, that the performance of such duties either caused or contributed to the occurrence of the hemorrhage (see *Hartford Accident &c. Co.* v. *Waters,* 87 *Ga. App.* 117 (73 S. E. 2d 70) ; therefore, an award of compensation was demanded.

It is contended by the defendants in error that the evidence failed to show that the claimant was actually performing his employment duties on the day of his attack. The contention is without merit. Mr. Menand, the claimant's immediate supervisor, testified as to what the claimant's employment duties were, and the evidence showed that on the day of the injury the claimant was on the job. Properly construed this evidence means that on the day Mr. White was stricken he was performing his normal employment duties as enumerated by his supervisor. See *Orkin Exterminating Co., Inc.* v. *Wright,* 92 *Ga. App.* 224, 225 (88 S. E. 2d 205).

It is contended by the defendants in error that an inference cannot be based on another inference and the case of *Globe Indemnity Co.* v. *Simonton,* 88 *Ga. App.* 694, 695 (76 S. E. 2d 837) is cited as authority for this principle. This is not an inflexible principle. The criterion for the applicability of the principle is remoteness. *Lumbermen's Mutual Casualty Co.* v. *Bridges,* 81 *Ga. App.* 395, 401 (58 S. E. 2d 849) ; *Atlanta Gas Light Co.* v. *Gholston,* 87 *Ga. App.* 40, 49 (73 S. E. 2d 49). In the instant case, the finding demanded by the evidence is not so remote as to make the principle stated in *Globe Indemnity Co.* v. *Simonton,* supra, applicable.

The evidence demanded the finding that the claimant's cerebral hemorrhage arose out of and in the course of his employment.

The cases of *Globe Indemnity Co.* v. *Simonton,* supra, and *Hoffman* v. *National Surety Corp.,* 91 *Ga. App.* 414 (85 S. E. 2d 784) do not require a contrary conclusion.

The court erred in affirming the full board's award.

*Judgment reversed. Gardner, P. J., and Townsend, Carlisle, Quillian and Nichols, JJ., concur.*